IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CATHERINE A. BIVENS                                                                 PLAINTIFF

V.                                              NO. 09-1031

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Catherine A. Bivens, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act) and Supplemental Security Income under Title XVI of the Act.  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See U.S.C. §405(g).

**Procedural Background**

Plaintiff filed her application for disability insurance benefits and supplemental security income on March 19, 2008, alleging disability since October 15, 2007.  (Tr. 80-85, 86-92, 105).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 45-54, 57-60).  Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on December 15, 2008, where Plaintiff and a Vocational Expert (VE) appeared and testified.

(Tr. 18-44). On March 13, 2009, the ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 6-16). The ALJ found that Plaintiff had the following severe impairments: fibromyalgia and knee pain. (Tr. 11 ). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the RFC to perform light work[1] with certain limitations.[2] (Tr.11-12). He found that Plaintiff would not be able to perform any past relevant work, but there were jobs in the national economy Plaintiff could perform, such as cafeteria attendant. (Tr. 14-15). Plaintiff's request for a review was denied by the Appeals Council on May 26, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 1-3).

**Evidence Presented**

Plaintiff was born in 1955 and graduated from high school. (Tr. 20). Plaintiff previously worked for approximately fifteen years at two lumber mills - International Paper and Potlatch. (Tr. 21-22). At International Paper, where she worked for nine years, she performed four or five different jobs on a rotation basis. At Potlatch, where she worked for approximately five years, she was a log deck operator. (Tr. 21-22). While at Potlatch, some time in 2003, a board went through a safety rail and hit Plaintiff on her right thigh. (Tr. 22). She went to the company

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. §416.967(b).

[2] The limitations set forth by the ALJ were: "except considering mild to moderate pain can lift or carry no more than 20 pounds occasionally or 10 pounds frequently, push or pull 20 pounds, stand or walk up to six hours and for two hours; alternating between sitting and standing at will. Posturely can never kneel or crawl and only occasionally climb, balance, stoop, bend, or crouch." (Tr. 12).

doctor after her injury for approximately three years and then began seeing her family doctor, Dr. Mirfat AlHariri-Bird, a specialist in Internal Medicine, Oncology and Hematology. (Tr. 25).

The records reflect that Plaintiff saw Dr. Bird on October 19, 2006, with pain in her head, burning in her legs, and tightness in her arms and legs. Dr. Bird diagnosed Plaintiff with fibromyalgia. (Tr. 222). Thereafter, Plaintiff saw Dr. Bird nineteen times between December 1, 2006 to September 17, 2008. (Tr. 170-179; 207-221; 223-227; 231-232). The majority of those visits related to Plaintiff's fibromyalgia and knee pain. Dr. Bird's diagnoses in 2007 and 2008 were as follows:

> September 25, 2007 - narcolepsy, fibromyalgia and degenerative joint disease (DJD).
> January 15, 2008 - fibromyalgia with lupus, narcolepsy and vitamin D deficiency.
> May 15, 2008 - fibromyalgia, a positive ANA, vitamin D deficiency and DJD.
> July 17, 2008 - narcolepsy/neuropathy, sero negative arthritis, and fibromyalgia..
> September 17, 2008 - fibromyalgia, vitamin D deficiency, DJD and neuropathy.

(Tr. 172, 175, 207, 231, 233). Finally, On February 12, 2009, Dr. Bird wrote a letter, stating that Plaintiff suffered from multiple medical problems, such as:

> Fibromyalgia, Osteoporosis, low Magnesium and Vitamin D, Neuropathy, Sero Negative Arthritis turned form[sic] Lupus in the past. In my opinion she is unable to work since she has limited ability to stand, walk, bend, unable to carry more than 10 lbs. For any further information feel free to contact the office.

(Tr. 242).

As a result of Plaintiff's knee pain, on January 25, 2007, a MRI of Plaintiff's left knee was performed at the Ouachita County Medical Center. (Tr. 186, 199). The impression was under surface tearing of the posterior horn of the medial meniscus and extensive joint effusion and fibrosynovial proliferation. (Tr. 186). On January 29, 2007, upon referral, Plaintiff saw Dr. C. Dwayne Daniels of the South Arkansas Orthopaedics & Sports Medicine Center. (Tr. 183).

-3-

Dr. Daniels found that Plaintiff had knee pain and effusion, with a possible medial meniscus tear. (Tr. 183). Dr. Daniels injected Plaintiff's knee with Depo-Medrol and Xylocaine, stating that if Plaintiff was not pain free, an arthroscopic debridement of her knee might be considered. (Tr. 183).

On March 22, 2007, Plaintiff saw Dr. Geetha Komatireddy, F.A.C.P., F.A.C.R., of the Musculoskeletal Institute of South Arkansas, complaining of burning and cramping sensation in her feet, generalized pain, and fatigue. (Tr. 157-161). Dr. Komatireddy found that Plaintiff had 16 of 18 tender points and concluded Plaintiff most likely suffered from fibromyalgia syndrome, stating that the trauma from the log might have triggered it. (Tr. 160). Plaintiff saw Dr. Komatireddy again on April 5, 2007, complaining of pain and fatigue. (Tr. 155-156). Dr. Komatireddy diagnosed Plaintiff with fibromyalgia syndrome, low vitamin D, left knee-meniscal tear healing, and a sleep disorder. (Tr. 155). She stated that she did not understand Plaintiff's sleep pattern and that Plaintiff may need a neuro-evaluation. (Tr. 155). In the April 5, 2007 report, Dr. Komatireddy found Plaintiff suffered tender points of 11 of 18. (Tr. 156).

On May 14, 2007, Dr. Dwayne Daniels performed a partial medial meniscectomy and major synovectomy on Plaintiff's left knee. (Tr. 188-189). Ten days later, Dr. Daniels reported Plaintiff as doing quite well, and that Plaintiff had a strong desire to return to work. (Tr. 181). Dr. Daniels stated that Plaintiff could return to work on Monday, May 28, 2007, without restrictions. (Tr. 181).

At the time of the filing of the applications for disability, Plaintiff was taking Calcitriol, Concerta, Hydrocodone, Nechro-zide; Oxycodone, Providil and Vitamin D. (Tr. 110). On September 22, 2008, Plaintiff was taking Loracet, Soma and Oxycontin for her fibromyalgia and

vitamin supplements. (Tr. 154). According to Plaintiff, some of these medications made her drowsy. (Tr. 145).

On April 18, 2008, a Physical Residual Functional Capacity (RFC) Assessment was completed by Dr. Elva Montoya. (Tr. 190-197). Dr. Montoya found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in her ability to push and/or pull. (Tr. 191). Dr. Montoya further found that Plaintiff was diagnosed with fibromyalgia, complained of generalized pain, burning, cramping and fatigue, had 11/18 tender points, neuro intact, and normal movements. (Tr. 191). She found that there were good results with the left knee arthroscopy, with no limitations, and concluded that the MER (medical evidence of record) did not support the extent of the limitations. (Tr. 191). She found Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds and could frequently balance, stoop, kneel, crouch, and crawl. (Tr. 192). No manipulative, visual, communicative or environmental limitations were established. (Tr. 193-194). On July 1, 2008, Dr. Sydnie Smith agreed with the limitations. (Tr. 228-229).

At the hearing before the ALJ on December 15, 2008, Plaintiff testified that she had pain in her head and back, problems with her knee and that the bottom of her foot stayed sore 24 hours a day. (Tr. 26). She stated that her pain occurred "anywhere" on her body, that her hands swelled a lot for a month, and that she was suffering with her left shoulder. (Tr. 27, 29). She said that she hurt all the time, had no hobbies anymore, and was tired and weak all the time. (Tr. 30). She also said that her hair came out and never came back in on top, that she stayed home the majority of the time, and that her children did most things for her. (Tr. 31). She sometimes

mowed the lawn with a riding mower, had trouble going up and down stairs, bending and lifting, and could not make a fist on either hand. The cold weather bothered her worse than the warm weather, and she would stiffen up in cold weather. She said that she lived with her twenty-five-year-old daughter. (Tr. 39).

The ALJ proposed a hypothetical to the VE, asking the VE to assume there was an individual who had the same age, education, background and work experience as the Plaintiff, with certain restrictions, and to determine whether she could perform her past relevant work. The VE answered in the negative. (Tr. 42). The ALJ then asked the VE if there were other jobs that existed in the local, regional or national economy that Plaintiff could perform, to which the VE answered she would be able to perform the job of cafeteria attendant. (Tr. 42). When the VE was asked to assume more stringent limitations on this individual, the VE concluded that there were no jobs that Plaintiff could perform. (Tr. 42-43).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

AO72A
(Rev. 8/82)

**Discussion**

The ALJ gave very little weight to the opinion of Dr. Bird, Plaintiff's treating physician, who opined that Plaintiff would not be able to work. Instead, the ALJ found that treatment notes from Plaintiff's visits to Dr. Bird reflected only general complaints of aches and pains without any diagnostic testing, observation notes or other substantiation of the degree of impairment alleged. (Tr. 14). The ALJ did, however, give great weight to the opinions of the state's consultative experts, finding that they were consistent with Plaintiff's medical records. (Tr. 14).

"A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003), paraphrasing 20 C.F.R. §404.1527(d)(2). When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the Plaintiff's impairments. 20 C.F.R. §416.927(d)(2)(ii). Additionally, the ALJ must either attempt to reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the Plaintiff's capabilities and the onset of his disabilities. See Smith v. Schweiker, 728 F.2d 1158, 1164 (8th Cir. 1984); O'Leary v. Schweiker, 710 F.2d 1334, 1342 (8th Cir. 1983); Funderburg v. Bowen, 666 F. Supp. 1291, 1298-1299 (W.D. Ark. 1987).

In this case, Dr. Bird is a specialist in Internal Medicine, Oncology, and Hematology, and had been treating Plaintiff for a period of at least three years, whereas Dr. Montoya and Dr. Smith were merely consulting non-examining physicians. Further, the ALJ failed to note that

at least two of Dr. Bird's progress notes indicated a positive ANA. The Court believes at the very least, the ALJ should have directed interrogatories to each of the physicians to obtain a more substantiated opinion of Plaintiff's capabilities and the onset of her disabilities. It would also have been helpful if the ALJ had asked Dr. Bird to complete a physical RFC assessment.

The Court is also concerned about whether Plaintiff's fibromyalgia might be affected by her sleep disorder. The Eighth Circuit Court of Appeals has recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling. Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007), citing Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005) (per curiam). Dr. Komatireddy diagnosed Plaintiff with a sleep disorder, and since she did not understand Plaintiff's sleep pattern, stated that Plaintiff might need a neuro-evaluation. As indicated earlier, on several occasions, Dr. Bird's diagnoses included narcolepsy. (Tr. 175, 175, 173, 172, 171, 170, 233, 232). The ALJ did not discuss Dr. Bird's diagnosis of narcolepsy or Dr. Komatireddy's diagnosis of sleep disorder or whether, in combination with Plaintiff's fibromyalgia, said impairments might be disabling.

The Court believes that the ALJ should have Plaintiff examined by a neurologist to determine whether Plaintiff has a sleep disorder and what role, if any, it might play in Plaintiff's fibromyalgia. The ALJ should also obtain physical RFC assessments from the neurologist as well as Dr. Komatireddy and Dr. Bird.

**Conclusion**

Based upon the foregoing, the Court hereby reverses the decision of the ALJ and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g). On remand, the ALJ is directed to direct interrogatories to Dr. Bird, Dr. Montoya and

AO72A
(Rev. 8/82)

Dr. Smith, to obtain a more substantiated opinion of Plaintiff's capabilities and the onset of her disabilities. The ALJ is also directed to have Plaintiff examined by a neurologist to determine whether Plaintiff has a sleep disorder and what role, if any, it might play in Plaintiff's fibromyalgia, and to obtain physical RFC assessments from the neurologist, Dr. Komatireedy and Dr. Bird.

IT IS SO ORDERED this 10th day of May, 2010.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE